**Larry WINEGAR, Appellant,**

v.

**DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT, sued as "Des Moines Independent School District"; Thomas Stokes; Gary Wegenke; Jerry Stillwell; Barbara Prior, Appellees.**

No. 93–2585.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1994.

Decided April 5, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 13, 1994.*

* Wollman, Magill and Hansen, JJ. would grant the suggestion.

Alfredo Parrish, Des Moines, IA, argued (T. Rae Hammans, on the brief), for appellant.

Thomas W. Foley, Des Moines, IA, argued (Edward W. Remsburg, on the brief), for appellees.

Before BEAM, Circuit Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and STROM,** District Judge.

BEAM, Circuit Judge.

Larry Winegar appeals the district court's grant of summary judgment in favor of the Des Moines Independent Community School District (School District) in his action for deprivation of procedural due process rights under 42 U.S.C. § 1983. We reverse.

---

** The HONORABLE LYLE E. STROM, Chief United States District Judge for the District of Nebraska, sitting by designation.

## I. BACKGROUND

The evidence establishes that Winegar had been an industrial arts teacher at East High School in Des Moines for nineteen years. He had an unblemished record. On October 3, 1991, he became involved in an altercation with a student. The School District concedes that, whether intentionally, or as horseplay which got out-of-hand, the student hit Winegar in the chest, causing Winegar to fall backward and hit his head. Winegar then, by his own admission and allegedly in self-defense, kicked the student, aiming at his rear, but the student turned and the kick landed in the groin or upper thigh. Winegar then slapped the student across the face.

Winegar and several student witnesses later reported the incident to the vice principal. Winegar was instructed to submit a written statement. Later that same day, Winegar spoke with the principal, Jerry Stillwell. During that discussion, Winegar was allowed to present his version of the incident. Stillwell prepared a written report and placed Winegar on paid suspension. (Winegar remained on paid suspension until December 3, 1991.)

The School District then implemented a Level I investigation of physical abuse, pursuant to district policy. Principal Stillwell referred the matter to Shirley Leonard, a School District employee and a "designated investigator" under Iowa Department of Education regulations. As part of her investigation, Leonard reviewed Stillwell's report, Winegar's written statement, the written statements of the student involved in the altercation, and statements of the student witnesses. She also interviewed the student involved, his father, and Winegar. Based on her review, she concluded that it was likely that an incident of physical abuse had occurred and referred the matter for further investigation.

The School District then retained William Pearce, a private investigator, to conduct a Level II investigation. He reviewed the Level I investigation materials and interviewed the student involved in the altercation, the student's mother, Winegar, and Winegar's wife. Pearce concluded that Winegar had physically abused the student and that the abuse was not justified.

Principal Stillwell and two other School District administrators, Dr. Barbara Prior and Mr. Thomas Stokes, reviewed the reports and supporting documentation and met with Winegar on November 20, 1991.[1] Winegar was again allowed to present his version of the incident. Stillwell and the School District's attorney later interviewed the student involved and several student witnesses. After several telephone conversations, Prior, Stokes, and Stillwell decided to suspend Winegar without pay for three days. They informed Winegar by letter. Winegar was actually suspended for four days from December 3 through 6, 1991. Further, as a result of the incident, he was transferred to another school "until a suitable industrial technology position becomes vacant at a school other than East High School." Appellant's Appendix at 25.

Winegar sought administrative review and was allowed to meet with Dr. Gary Wegenke, the superintendent. Wegenke upheld the committee's finding. Winegar then asked for a hearing before the school board and the School District refused.

Winegar filed this action in the district court alleging deprivation of property in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution. He also alleged injury to his reputation. The district court granted the School District's motion for summary judgment, finding that Winegar's four-day suspension without pay entitled him to procedural due process protection but that the opportunity to relay his version of events afforded him all the process he was due.

## II. DISCUSSION

■ We review a grant of summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir. 1992). The question before the district

1. There is some dispute about whether Winegar received the reports, but the dispute is not rele-vant to our analysis.

court, and this court on appeal, is whether the record, when viewed in light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

■ A government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest.[2] *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges. *Shands v. Kennett*, 993 F.2d 1337, 1347 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 880, —— L.Ed.2d —— (1994). The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like. *See id.* (and cases cited therein). We find that allegations of unjustified child abuse are sufficiently stigmatizing to a teacher's reputation, honor, and good name in the community to implicate liberty interests.[3]

■ A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The existence of a property interest must be determined with reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. *Id.* A property interest in employment can also be created by implied contract, arising out of customs, practices, and de facto policies. *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699, 2700, 33 L.Ed.2d 570 (1972). When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Here, the parties agree that Winegar has a protected property interest in his employment by virtue of his continuing contract under Iowa Code Ann. §§ 279.13–.19 (West 1988).[4]

■ Having decided that Winegar has property and liberty interests we must thus decide what process is due Winegar.[5] The fundamental requirement of due process is the opportunity to be heard at a meaningful

2. The School District argues that liberty interest claims were raised for the first time on appeal. Though not artfully pleaded, we find such claims in the complaint. Appellant's Appendix at 50–51. Also, the parties and court repeatedly referred to Winegar's clean record and to damage to his reputation at argument on the motion for summary judgment in district court. Transcript of Hearing on Motion for Summary Judgment at 21. It is clear to us that the allegations of injury to reputation and good name are currently and always have been at the heart of this dispute. Any claim of surprise by the School District is disingenuous.

3. The School District also argues that Winegar cannot assert a liberty interest for the reason that the stigmatizing information was not "published," citing our holding in *Hogue v. Clinton*, 791 F.2d 1318, 1322 (8th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986). In that case we held that a finding of publication is a prerequisite to demonstrating a liberty interest, but noted that a personnel file replete with wrongdoing may be a sufficient publication if the file were made available to prospective employers. *Id.* at 1322 and n. 7. Here, the evidence shows that the stigmatizing information was dis-

seminated to the point that an outside private investigator was hired and students were interviewed. We find the information has been sufficiently disseminated to satisfy the publication requirement.

4. Iowa Code Ann. §§ 279.13–.19 prescribe procedures for teacher termination or non-renewal of teacher contracts, culminating with a hearing in front of the school board.

5. Although the School District concedes that this case involves more than a de minimis deprivation, it argues that because the impact of the deprivation is slight, the process due is lessened. As long as property deprivation is more than de minimis, its gravity is irrelevant to the question of whether the Due Process Clause must be taken into account. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). It is true, however, that while the length and consequent severity of a deprivation are not decisive of the basic right, they are factors to weigh in determining the appropriate form of hearing. *Id.*

time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Due process is a flexible concept that varies with the particular situation. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). To determine what process is due in any particular case, we must weigh:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903).

**6.** In this way the present case differs from *Bartlett v. Fisher,* 972 F.2d 911, 915 (8th Cir.1992) where we discussed the minimal due process standards enunciated in *Goss,* 419 U.S. at 579, 95 S.Ct. at 738–39 (notice of charges and an opportunity to respond to them) with regard to suspension of a public employee.

The School District cites *Goss,* which involved a student suspension, for the proposition that Winegar has been afforded all the process due him. In *Goss,* the Supreme Court found that student liberty and property interests were implicated in a short suspension, but stated that due process is satisfied by "some kind of hearing;" that is, notice of the charges and an opportunity for the student to tell his or her side of the story. *Id.* at 579, 95 S.Ct. at 738–39. The School District asserts that Winegar's interests are overshadowed by the School District's interest in preserving order in its school and in maintaining an effective and expeditious method for resolving allegations of teacher misconduct, stating that "no meaningful distinction can be made between the short suspension of a student and that of a teacher." School District's Brief at 24.

We find the School District's reliance on *Goss* misplaced. A *Goss*-type hearing was approved in *Bartlett* only because the plaintiff in *Bartlett* received a full evidentiary hearing after the deprivation, as discussed *infra* at 901. Also, the need for only an attenuated hearing in a short-duration student suspension is based on a school district's need to maintain student discipline. *Goss,* 419 U.S. at 580, 95 S.Ct. at 739. Similarly, a prisoner's interests are satisfied by less process than, say, a welfare recipient's due to the nature and complexity of prison management.

Applying the principles of *Mathews* to the present case, we first find that Winegar's interest is weighty on the scales of *Mathews.* Winegar has a nineteen-year history as an industrial arts teacher and a clean record in that capacity. The deprivations at issue here are significant. This case involves more than a mere suspension.[6] As noted above, Winegar has been deprived of liberty interests. He has also been transferred to another school. The transfer, which might not implicate due process interests if executed for ordinary business or administrative reasons, must also enter into the calculus here.[7] *See, e.g., Wilson v. Walker,* 777 F.2d 427, 429 (8th Cir.1985) (no protected property interest in a pilot's assignment to flight duty absent statute, regulation or other source that would establish a claim of entitlement to it). An employee can have a protected property interest in a benefit, such as a particular assignment or duty station, if he legitimately expects to continue in that as-

*Compare Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (prisoners due process rights are limited "by the nature of the regime to which they have been lawfully committed") *with Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970) (welfare recipients afforded full procedural due process).

We reject the School District's attempt to place a stigmatizing, unpaid teacher suspension and punitive transfer in the same category, for due process purposes, as either a short-duration student suspension or a prisoner's discipline, since neither temporarily suspended students nor prisoners are afforded the full panoply of rights afforded a statutorily protected public employee. The School District's assertion that limitation of due process rights is necessary to enable it to "manage and control its work force," School District's Brief at 22, is similar to saying that the property or liberty interests of prison guards or wardens are circumscribed merely because the guards or wardens work in a prison environment. A school district owes its employees no less than any other public employer.

**7.** Although it is not clear from the record before us, there is some suggestion that this case could also be viewed as a constructive termination. It appears that after an extended medical leave for injuries resulting from the student's attack, Winegar declined the transfer and is no longer teaching. He may have been required to deplete accrued sick leave which would arguably amount to another deprivation under this theory. Because the record is unclear on this issue, we will not reach it.

signment or duty station. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. Here, the School District has not suggested that Winegar would have been transferred if the incident had not occurred. He had an impeccable record at East High and legitimately expected to stay there. Under the circumstances, Winegar has demonstrated a weighty private interest in retention of his job, his assignment, and his good name that are adversely affected by the School District's official actions of suspension and punitive transfer.

■ Second, we must assess the risk of an erroneous deprivation and the probable value of additional procedural safeguards. This involves consideration of both the predeprivation and postdeprivation procedures utilized here. In general, "something less" than a full evidentiary hearing has been held sufficient prior to adverse administrative action. *Moore v. Warwick Pub. Sch. Dist. No. 29,* 794 F.2d 322, 327 (8th Cir.1986) (quoting *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495). An assessment of the adequacy of predeprivation procedures depends on the availability of meaningful postdeprivation procedures. *See, e.g., Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495; *Post v. Harper,* 980 F.2d 491, 494 (8th Cir.1992) (upholding minimal predeprivation procedures where plaintiff requested and received a full adversarial evidentiary posttermination hearing); *Bartlett v. Fisher,* 972 F.2d 911, 915 (8th Cir. 1992) (same); *Moore,* 794 F.2d at 327 (availability of prompt postdeprivation hearings obviates need for predeprivation hearing in certain circumstances which require quick action by the state).

Here, the predeprivation procedures might have been adequate if Winegar had been given a meaningful chance to challenge the outcome of those procedures. Winegar was informed of the charges against him before his suspension and was given a chance to tell his side of the story. Those procedures were similar to those approved in *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. In contrast to *Loudermill* and its progeny, though, Winegar was not allowed a meaningful opportunity to be heard after the initial suspension. *See Loudermill,* 470 U.S. at 546–47, 105 S.Ct. at 1495–96; *Post,* 980 F.2d at 494; *Bartlett,* 972 F.2d at 915. Winegar characterizes the postdeprivation encounters with the School District as meetings rather than hearings. We agree.[8] Winegar was never given an opportunity to cross-examine those witnesses who had furnished statements to the private investigator or to present witnesses on his behalf.

■ Apparently conflating two concepts, the School District outlines and relies on the extensive investigation to support its position that Winegar had an adequate opportunity to be heard. The investigation is exactly that— an investigation. No matter how elaborate, an investigation does not replace a hearing. We find that the School District's decision occasioned the sort of irreparable consequences that entitled Winegar to a full-blown hearing at some point. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (full-blown predeprivation hearing required if initial taking of welfare benefits will irreparably harm plaintiffs before a postdeprivation hearing can take place).

The last step of the *Mathews* balancing test is to assess the fiscal and administrative burdens that the additional procedure would entail. Here, we find the burdens almost negligible in comparison to Winegar's weighty interests. Winegar sought only further administrative review by the school board. There is little question that the School District could have provided Winegar with a hearing—including a chance to present and cross-examine witnesses—at little cost in terms of either time or money. The administrative procedures for such a hearing are already in place by virtue of Iowa Code Ann. §§ 279.13–.19.

■ We are mindful that the Due Process Clause does not convert the federal courts into arbitral forums for review of those commonplace personnel decisions that public agencies routinely make. *See Miller v. Lovell,* 14 F.3d 20 (8th Cir.1994) (no due process rights implicated when an employee

---

8. We have reviewed the evidence, including a letter from Superintendent Wegenke in response to Winegar's request for an administrative review. We agree with Winegar that he had no reason to believe he could present witnesses at that meeting. Appellant's Appendix at 28.

was not punished in any way; did not lose pay, benefits, job status, or tenure; and his good name, reputation, honor, or integrity were not at stake). We do not view this as a case involving mundane day-to-day details of school administration. These are serious allegations with serious and far-reaching repercussions and Winegar deserved a meaningful chance to confront those allegations.

Finally, we deem it ironic, if not strange, in a day when students often carry knives or guns to school, that a situation where a student admittedly attacks a teacher results in discipline of the teacher but not of the student.[9]

## III. CONCLUSION

For the foregoing reasons, we reverse the entry of summary judgment in favor of the School District and remand to the district court for further proceedings consistent with this opinion.

---

9. The record is silent on whether the student received any punishment, but comments at oral argument lead us to believe that the student went unpunished. Counsel for the School District asserted that the student's punishment is irrelevant since this is not an equal protection case. We find the information, if true, is indeed relevant, if only to show that there may have been some partiality involved in the decisionmaking process.