STATE ex. rel. John J. DONELON, Appellant,

v.

THE DIVISION OF EMPLOYMENT SECURITY, Respondent,

and

State of Missouri, Respondent–Intervenor.

No. WD 54887.

Missouri Court of Appeals, Western District.

June 30, 1998.

 

Brendan J. Donelon, Kansas City, for appellant.

Marilyn G. Green, Jeferson City, for respondent Div. of Employment Security.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jacqueline K. Hamra, Asst. Atty. Gen., Jefferson City, for respondent-intervenor State of Missouri.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

RIEDERER, Judge.

John J. Donelon appeals from the trial court's judgment denying his request for a writ of mandamus, wherein Appellant alleged the Department of Employment Security (DES) failed to provide the constitutionally required procedural due process with regard to a three-day suspension he received in November 1995, and wherein Appellant challenged the constitutionality of § 36.390 [1] and 1 CSR 20–3.070(3)(A). We affirm.

## Facts

Appellant has been an employee for the Division of Employment Security ("DES") since November 23, 1987. He began working for DES in its Columbia office in April 1992 as an Employment Service Technician. DES employees are Missouri merit system employees under Chapter 36.

On August 17, 1995, Appellant was asked by another DES employee, Sharon Freeman, to help a customer. Appellant used profanity in a loud voice to show his displeasure. This happened in the presence of other employees and members of the public. Appellant's supervisor, Bill Dent, was not in the office at the time of the incident. On the following day, Appellant approached Dent to inform him about the incident. Dent told Appellant that DES had had that type of trouble before and that those kind of incidents could not occur in the office. Dent also spoke with other staff members who witnessed the incident to give their account of what happened. Dent then made an entry on Appellant's performance log. An employee log is kept by supervisors to document both assignments to the employee and disciplinary actions against the employee. There is some dispute as to whether the employee is required to review and initial all entries made in the log.

On September 18, 1995, another incident occurred between Appellant and Sharon Freeman. Appellant complained in a loud voice to Freeman about a telephone call she transferred to him. Appellant again used profanity. This incident also happened in the presence of other employees and members of the public. No supervisor or employee of DES spoke with Appellant regarding this incident.

Dean Smith, manager of the Columbia office, requested that Freeman submit to him written statements regarding the two incidents. Freeman's statement regarding the September 18 incident included her opinion that Appellant might bring a gun to the office. On September 20, 1995, Smith sent a memorandum to the District Manager, Oren Henry, and to the Deputy Director, Rick Hemming, recommending a disciplinary suspension of Appellant based on the August 17 and September 18 incidents, as well as other similar incidents involving Appellant. Rick Hemming sent an interoffice communication to the Chief of Human Resources, Ernestine Gage, and recommended a five-day suspension without pay. Gage then contacted the legal department to review the recommendation. After a meeting between the district managers and the DES Director, Paul Rodgers, Rodgers sent an interoffice memorandum to Gage, stating that he recommended a three-day suspension without pay. Gage prepared a suspension letter which was signed by Rodgers. The letter stated that Appellant was placed on disciplinary suspension without pay for three days, effective November 7, 1995, through November 9, 1995. The letter was dated October 23, 1995 and was forwarded to Smith at the Columbia office for delivery.

On November 6, 1995, Smith met with Appellant and presented the suspension letter to him. Smith testified that he provided Appellant with the reasons for his suspension at this meeting. Smith showed Appellant the letters written by Freeman and told him that he could obtain copies of Freeman's statements from the central office in Jefferson City. Smith testified that Appellant had the opportunity to respond and that Appellant's only response was that, "It didn't amount to anything. It's not important." Smith then made entries in Appellant's performance log regarding the presentation of the suspension letter, some subsequent conduct by Appellant, and Appellant's performance appraisal. Smith showed the entries to Appellant and

1. All statutory references are to RSMo 1994, unless otherwise indicated.

recorded on the log that Appellant refused to initial the entries made by Smith.

On November 7, 1995, Appellant traveled to the Jefferson City DES office to review his personnel file. While reviewing his personnel file, Appellant found all of the documentation relating to his three-day suspension, including the two statements written by Freeman. During that same visit, Appellant filed a formal grievance regarding his suspension pursuant to the DES grievance policy. On November 29, 1995, Appellant met with Smith for his annual evaluation. He received an "improvement expected" rating due to the three-day suspension. While at this meeting, Appellant asked Smith if he could see his 1995 employee log. Appellant made a copy of the log. Appellant testified that this was the first time he saw the log entries regarding allegations of his poor behavior. At this meeting on November 29, 1995, Appellant also received a letter from the District Manager, Oren Henry, responding to his written grievance. The letter was labeled a step three response. A step three response is due within ten days of receipt of the grievance appeal. Although the response was dated November 13, 1995, it was not delivered until November 29, 1995. Henry stated in the response that he had talked with both Dent and Smith and that he believes that Appellant was made aware of the conduct in question. Henry also states that there are log notations and witness statements concerning the actions in question.

## Procedural History

On November 24, 1995, Appellant filed an appeal with the Personnel Advisory Board ("PAB") regarding this three-day suspension under § 36.390. Appellant did so knowing that § 36.390 limited appeals to persons suspended more than five days, because he was challenging the constitutionality of the statute. On December 12, 1995, the PAB dismissed the Appeal on the grounds that it lacked jurisdiction under § 36.390, because Appellant was only suspended for three days.

On June 6, 1996, Appellant filed a Petition for Writ of Mandamus with Supporting Suggestions against the PAB and DES. On July 5, 1996, the PAB filed a motion to dismiss on the basis that Appellant was not entitled to a hearing. On September 20, 1996, the trial court sustained PAB's motion to dismiss and dismissed the PAB as a party to the action. On July 9, 1996, DES filed a motion to dismiss for failure to state a claim upon which relief can be granted, which was denied. On February 20, 1997, the trial court held an evidentiary hearing. At the end of the hearing, the judge ordered that the two statements written by Freeman be taken out of Appellant's personnel file. On May 20, 1997, the trial court issued its findings of fact, conclusions of law and judgment of the court. The trial court determined that Appellant received the due process he was entitled to at the November 6th meeting between Appellant and Smith. Appellant was given the suspension letter, was given an explanation of the charges, and was given an opportunity to tell his side of the story. On June 3, 1997 Appellant filed a motion for reconsideration. The court did not rule on the motion. A notice of appeal was filed on September 9, 1997. Since Appellant was challenging the constitutionality of § 36.390 and 1 CSR 20–3.070(3), he filed an application for transfer to the Missouri Supreme Court on November 24, 1997. On December 23, 1997, Appellant's application was denied. On January 30, 1998, this court sustained the motion of the State of Missouri to intervene in this action.

## Standard of Review

■ Appellant's petition for writ of mandamus was brought pursuant to § 536.150, which provides that judicial review of an administrative decision in a noncontested case may be initiated by a writ of mandamus. In noncontested cases, this court reviews the decision of the circuit court on appeal, rather than the decision of the agency. *State ex rel. Valentine v. Board of Police Commissioners*, 813 S.W.2d 955, 958 (Mo. App.1991). In cases governed by § 536.150 the circuit court conducts a *de novo* review in which it hears evidence on the merits of the case, makes a record, determines the facts and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or

otherwise involves an abuse of discretion. *Barry Service Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo.App.1995). This court will sustain the judgment of the circuit court unless there is no substantial evidence to support it, unless the decision is against the weight of the evidence, or unless the circuit court erroneously declares or applies the law. *State ex rel. Valentine,* 813 S.W.2d at 958.

## I.

Appellant contends in his first point that the trial court erred by failing to issue a writ of mandamus because he was denied his right to procedural due process under the fourteenth amendment of the United States Constitution and Article I Section 10 of the Missouri Constitution. Specifically, Appellant argues that he has a property and liberty interest in his job and that he was therefore owed certain procedural due process rights, to wit, the right to a certain pre-deprivation process and the right to a post-deprivation appeal.

### 1. Property and Liberty Interest

#### A. Property Interest

■ Appellant argues that he has a property interest in his employment. "To invoke the protections of due process, a person must have been deprived of a property or liberty interest recognized and protected by the Due Process Clauses of the United States and Missouri Constitutions." *Division of Family Services v. Cade,* 939 S.W.2d 546, 552 (Mo.App.1997). "Property interests are created and defined by rules or understandings that originate in sources such as state law." *Id.* For employees to have a property interest in their employment, they must have a claim of entitlement to it, which usually arises from limitations put upon employers by statute or contract regarding termination of employees. *Id.* Appellant was a regular employee under the state merit system. § 36.020(10). "Because regular, non-probationary employees of the state may be discharged only 'for cause,' under state law he had a constitutionally protected property interest in his continued employment." *Cade,* 939 S.W.2d at 552.

#### B. Liberty Interest

■ Appellant also argues that he has a liberty interest in his employment, reputation and good name. Specifically, Appellant claims that the defamation of his reputation along with the denial of his continued employment, was a deprivation of a liberty interest. "[T]he safeguards of procedural due process, requiring notice and an opportunity to be heard, attach and protect a liberty interest where a person's good name, reputation, honor or integrity is at stake because of governmental action." *Barnes v. City of Lawson,* 820 S.W.2d 598, 601 (Mo.App.1991) (citing, *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). "To infringe upon a person's liberty interests, the reasons for discharge must seriously harm their standing within the community or foreclose their future opportunities for re-employment." *Id.* "However, when a governmental employee is terminated for unsatisfactory performance and insubordination, an infringement of liberty does not attach." *Id.* Here, Appellant was suspended for unprofessional conduct on the job. He was accused of having temper tantrums and loud outbursts, as well as speaking to staff in a rude and derogatory manner. This is an accusation of unsatisfactory job performance.

■ Appellant also contends that the following items in his personnel file injure his good name and reputation: Freeman's letter containing the gun reference; Smith's communication that states Appellant has been known to throw temper tantrums, and that his acts are always directed toward females and that they fear him; and Henry's letter that states Appellant has always shown displeasure towards management. Appellant relies heavily on the letters placed in his file that had been written by co-employee Freeman. However, it is important to note that we are reviewing the judgment of the trial court. The trial court ordered the Freeman letters, in their entirety, to be removed from the Appellant's file. Therefore, Appellant's reliance on these letters as probative of a violation of a liberty interest does not help him. Our review of the contents is limited, therefore, to the documents other than the

Freeman letters. Furthermore, the trial court found that the discipline was not based on the opinions in those letters related to Freeman's fears.

Appellant cites *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895 (8th Cir.1994), for the proposition that placing damaging documents in an employee's personnel file can be a violation of a liberty interest. In *Winegar*, a teacher with an unblemished record was involved in an altercation with a student that was later classified as unjustified physical abuse. The teacher was suspended for four days and transferred. The court held that "[a]n employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Id.* at 899. The court went on to state that, "allegations of unjustified child abuse are sufficiently stigmatizing to a teacher's reputation, honor, and good name in the community to implicate liberty interests." *Id.* The only potentially stigmatizing items in Appellant's personnel file were the Freeman letters. However, the trial court has already ordered that the letters be removed from Appellant's personnel file. Accordingly, we find that Appellant does not have a liberty interest herein, because his good name and reputation are not at stake due to governmental action.

### 2. Pre-deprivation Process

■ Second, Appellant argues that he was not provided with an appropriate pre-deprivation process prior to his three-day suspension. This court in *Cade*, which involved a suspension of more than five days, determined that Missouri government employees are entitled to due process protections of their property interest in their jobs. 939 S.W.2d at 553. Here, however, Appellant was only suspended for three days. Thus, the question for us to decide is what due process protections attach when a Missouri government employee receives a three-day suspension.

■ "The Due Process Clauses require that in order to deprive a person of a property interest, he must receive notice and an opportunity for a hearing appropriate to the nature of the case." *Moore v. Board of Education of Fulton School*, 836 S.W.2d 943, 947 (Mo. banc 1992). In other words, Appellant is entitled, at a minimum, to notice and an opportunity to be heard. We must determine whether the process afforded Appellant by DES was sufficient to meet this due process standard of notice and an opportunity to be heard.

■ In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court utilized a balancing test to determine what process is sufficient. The *Mathews* test balances three interests: (1) the private interest affected by the action; (2) the risk of an erroneous deprivation of that interest under the procedures being used; and (3) the government's interest in resolving the matter without being unduly burdened by additional or substitute procedural requirements. *Id.* The United States Supreme Court has further held that in determining what process is due, under this analysis, account must be taken of the length and finality of the deprivation. *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1813, 138 L.Ed.2d 120 (1997). A lengthy suspension or one that is had without appeal will require greater due process.

First we consider the private interest affected by the action of DES. *Mathews*, 424 U.S. 319, 96 S.Ct. at 903. The United States Supreme Court in *Gilbert* recognized "the severity of depriving someone of the means of his livelihood." 117 S.Ct. at 1813. And this court has previously determined that a Missouri state employee has "an important and protected interest in seeing that his employment and receipt of the benefits of that employment [is] not interrupted for a significant period." *Cade*, 939 S.W.2d at 553. Here, Appellant's suspension of only three days is a much less significant period than the twenty-day suspension in *Cade*. Nevertheless, Appellant has an important and protected interest in ensuring that his employment is not interrupted. The court in *Click v. Board of Police Commissioners*, determined that a three-day suspension was not *de minimus*. 609 F.Supp. 1199, 1204 (W.D.Mo.1985). We agree, and find that Ap-

pellant's interest in his continued employment is an important interest.

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used and the probative value, if any, of additional or substitute or procedural safeguards." 96 S.Ct. at 903. In this case, prior to Appellant's suspension, Smith met with Appellant and presented him with a letter notifying him of his suspension and provided him with the reasons for his suspension. Smith also showed Appellant the letters written by Freeman. Appellant was given an opportunity to respond and said, "It didn't amount to anything. It's not important." Under *Cade,* this important interest in continued employment is protected by making sure that the employee is "heard at a meaningful time and in a meaningful manner by allowing him information to be able to defend the allegations and present conflicting evidence in a timely manner." 939 S.W.2d at 554. In this case, Appellant was provided with a written explanation for his suspension, as well as an opportunity to speak with his superior, prior to his suspension. It was Appellant's prerogative to use this time to alert his employer if the allegations against him were without merit. Although it must be conceded that DES did the bare minimum, it nevertheless followed a procedure which informed its employee of the claims against him and a chance to tell his side of the story. It also gave DES an opportunity to halt the suspension if further investigation were needed. The procedures used by DES substantially alleviated the risk of an erroneous deprivation of Appellant's employment.

The third *Mathews* factor is the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 96 S.Ct. at 903. In *Click,* the court held that the Kansas City Police Department had a "substantial interest in immediate, effective discipline 'to promote efficiency, foster loyalty and obedience to superior officers,

maintain morale, and instill public confidence in law enforcement.'" 609 F.Supp. at 1206 (*quoting, Hughes v. Whitmer,* 714 F.2d 1407, 1419 (8th Cir.1993). Although DES arguably does not need to promote obedience to superior officers, in the same way that a police department does, nevertheless, this Division, as a branch of the government that serves the people and taxpayers of the state, does have a substantial interest in the immediate and effective discipline to promote efficiency, maintain morale and instill public confidence. "A suspension without pay for three days is an important disciplinary tool for less serious infractions of departmental policies." *Id.*

Thus, under *Mathews,* this case presents an important private interest, a low risk of an erroneous deprivation, and an important governmental interest. Under these circumstances, we hold that where there is a three-day suspension of a Missouri state employee, and the employee is given: (1) a written notice of the charge; (2) an explanation of the basis for the charge; and (3) an opportunity to present his/her side of the story, then the employee has been provided with the process that is due under the Constitution. *See Click,* 609 F.Supp. 1199; *Mathews,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. DES provided Appellant with a written notice, an explanation and an opportunity to tell his side of the story.[2]

### 3. Post-Suspension Process

■ Next, Appellant argues that he was not provided with an appropriate hearing or appeal process after his three-day suspension. Appellant bases this claim on the fact that § 36.390 and 1 CSR 20–3.070(3) does not provide a hearing for suspension of five days or less, and that the grievance procedure is inadequate. Section 36.390.5 states:

"Any regular employee who is dismissed or involuntarily demoted for cause or suspended for more than five working days may appeal in writing to the board within thirty days after the effective date thereof,

---

**2.** We note in passing that the process used by DES, while adequate, appeared haphazard. Since DES is in the "employment security" business it would be better served to use a process,

expressed in clear unequivocal terms, that embodies written notice of the charge, an explanation of the basis of the charge, and an opportunity to present the other side of the story.

setting forth in substance the employee's reasons for claiming that the dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service.

Appellant first claims that the DES suspension process was not introduced into evidence. However, Gage's testimony at the hearing explained the whole suspension process up to what needs to be put in a suspension letter, when the judge stated that he had heard all he needed to hear in the case. Appellant also argues that the written procedure was never provided to the trial court. During the hearing the judge asked for a copy of the employee handbook which contains the grievance procedure on page 22–24. The handbook is listed as Respondent's exhibit A.

Ultimately, Appellant contends in this subpoint that his due process rights were violated because he was required to pursue his appeal before people who were involved in his discipline. Appellant relies heavily on *Hortonville School District No. 1 v. Hortonville Education Assn.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), and *Winegar*, 20 F.3d 895. These cases do not help Appellant. *Hortonville* involved a teachers' strike and whether the discipline could be determined by the school board. The court found that mere familiarity with the facts did not disqualify someone in the agency from sitting on a post-suspension tribunal. *Id.* 96 S.Ct. at 2316. Here, likewise, there is no allegation of bias. Further, *Winegar* was a case where liberty interests were at stake due to criminal allegations. 20 F.3d 895. That is not the case here, as Appellant has no liberty interest at stake in this case.

Appellant's claim regarding post-suspension process is without merit. We have already found that Appellant was afforded appropriate due process prior to his suspension. There is no authority for the proposition that he is entitled to both pre-suspension process and post-suspension process.

### 4. Notice and an Opportunity to be Heard

■ The timing and content of the notice and the nature of the hearing depend on the appropriate accommodation of the competing private and governmental interests involved. *Click*, 609 F.Supp. at 1205. Here, the notice is governed both by the due process analysis under *Mathews*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, and by the state regulation which provides, "Any employee being suspended shall be furnished with a statement in writing specifically setting forth the reasons for the suspension." 1 CSR 20–3.070(3)(A). In this case, the notice was provided the day before the suspension was to begin. The notice informed Appellant he was being suspended for three days and went on to explain, "This action is being taken due to your unprofessional conduct on the job. This relates to your display of temper tantrums, loud outbursts and speaking to staff in a rude and derogatory manner in the presence of our clientele." This notice fulfills the requirements of the state regulation. Furthermore, this notice is certainly adequate to allow Appellant to understand the nature of the allegations sufficiently to defend against them and oppose the suspension. *Cade*, 939 S.W.2d at 554.

■ Appellant was also entitled to an opportunity to be heard. He was not entitled to a full evidentiary hearing, for in *Cade,* this court held that where there was a 20–day suspension, due process did not require a full evidentiary hearing. *Id.* at 555. Rather, he was entitled to an opportunity, prior to suspension, to make a rebuttal to the charges against him. *Id.* Appellant was informed of the allegations by written notice. He met with his supervisor for twenty to thirty minutes. He was asked if he had any response. His response was that "It didn't amount to anything. It is not important." Appellant was given an opportunity, prior to suspension, to make a rebuttal to the charges against him. *Id.*

The trial court did not err in failing to issue a writ of mandamus because Due Process was satisfied. Point I is denied.

### II.

In his second point, Appellant initially claims that the trial court erred by failing to find § 36.390 unconstitutional because "it

confers a protected property interest and then limits the interest conferred." He argues that "Section 36.390 and the underlying regulations do not require any process for employees suspended five days or less." He argues further, citing *Click*, that his three day suspension without pay is not *de minimus* and therefore, due process should be afforded. 609 F.Supp. at 1204. We agree and have so held. Appellant finally argues that he should be afforded: "(1) notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to present his side of the story prior to the deprivation."(emphasis in original). In other words, this argument is the same argument made under point I. Accordingly, point II is denied.

All concur.