IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 25, 2001 Session

## DONALD E. BLACKBURN, CO-EXECUTOR OF ESTATE OF GEORGE C. BLACKBURN, DECEASED v. BETTY BLACKBURN

**A Direct Appeal from the Probate Court for Shelby County**
**No. B-28092      The Honorable Donn Southern, Judge**

_____

**No. W2000-00393-COA-R3-CV - Filed March 27, 2001**

_____

Executor of deceased's estate appeals the probate court order closing the deceased's conservatorship. The final order closing the conservatorship, among other things, set aside a part of the order appointing conservator which ordered the appointed conservator to convey to the ward real estate owned by the ward that she had previously conveyed to herself as attorney in fact for the ward. Executor appeals.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Probate Court is Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBYLILLARD, J., joined.

George P. Collier, Jr., Collierville, For Appellant, Donald E. Blackburn

Jerry H. Schwartz, Memphis, For Appellee, Betty Blackburn

**OPINION**

Appellant, Donald E. Blackburn, Executor of the Estate of George C. Blackburn, deceased, appeals the "Order Approving Amended Final Accounting and Discharging Conservator and Closing Conservatorship" in the matter of Conservatorship of George C. Blackburn.

There is no transcript of testimony in this case. The facts are basically undisputed as reflected in the documents filed as part of what was formerly referred to as the technical record. On September 3, 1996, petitioner, Betty Blackburn ("Appellee" or "Conservator"), filed a petition for the appointment of conservator for respondent, George C. Blackburn, her husband. The petition alleged that respondent, because of advanced age and mental infirmities, was unable to manage his own affairs. The affidavit of a physician, Dr. John Harris, was filed with the petition. On September 3, 1996, the probate court appointed a guardian *ad litem* to represent the respondent, to investigate

and determine the facts and report the facts to the court. A hearing was scheduled for September 30, 1996 at 11:00 a.m.

On September 16, 1996, respondent, George C. Blackburn, filed a "Response and Petition for Relief by Respondent." The response denies that respondent is unable to manage his own affairs and denies that he should have a conservator appointed. Respondent avers that he is able to look after himself and that although he had serious physical ailments, he has improved and is able to take care of himself. Respondent further avers that he lives at 4231 Zaio, Memphis, Tennessee, owned by both petitioner and respondent, and that the properties at 4219 and 4327 Zaio were in his name only. He further avers that a 444-acre farm in Fayette County was in his name only, and that the petitioner used a power of attorney to execute a quit claim deed on March 21, 1996 in which she conveyed the property to herself.

By counter-complaint, respondent avers that while he was seriously ill and in the hospital with cancer on March 17, 1996, the petitioner obtained a power of attorney from him for the purpose "to take care of business while he was sick." He avers that there was no notary public present in the hospital when he signed the document, that the acts on the part of petitioner constitute a fraud, and that the document was obtained when he was incapable of protecting himself. He avers that a paper writing between him and George D. Blackburn was recorded in the Register's Office of Fayette County, Tennessee, which purports to lease the 444-acre farm to George D. Blackburn for a period of 55 years at one dollar per year. He further avers that petitioner executed a quit claim deed on March 21, 1996, which she recorded in the Register's Office of Fayette County, conveying respondent's 444-acre farm to herself. He avers that petitioner and George D. Blackburn have acted in concert to perpetrate a fraud on the respondent. He further avers that petitioner executed a quit claim deed for the properties at 4219 Zaio and 4237 Zaio in Memphis conveying the properties to respondent and petitioner as tenants by the entirety. Respondent prays in the counter-complaint that the court place the parties back in the position they held prior to the transfer of property by use of the power of attorney.

Although a hearing was initially set for September 30, 1996, there is no record that a hearing took place on that date, nor is there an order in the record continuing the case. The record indicates that on January 7, 1997, a motion was filed on behalf of petitioner to amend the petition appointing the conservator. A copy of an amended petition is included in the record, although there is no order allowing such an amendment. This amended petition updates some additional income and assets of the respondent and further avers that Donald Blackburn took the respondent to James Crislip, attorney, who prepared a revocation of power of attorney for the respondent. The petition further avers that Paul J. Neal, Ph.D. evaluated the respondent, and that respondent was hospitalized at a Memphis hospital after experiencing seizures. The petition alleges that respondent moved important documents from their usual place, and that he should be enjoined from disposing of or liquidating any of his assets. The petition again prays that the petitioner to be appointed as conservator with all of the rights and duties thereunto belonging.

On March 4, 1997, "Further Response to Amended Petition for Appointment of Conservator" was filed by James A. Crislip, as a friend of the court, and in which Ronald Blackburn joined. The response avers that the said James A. Crislip is simultaneously filing a response to the report of the guardian *ad litem* and is also moving the court to issue an order requiring appointment of an attorney *ad litem* to represent the interest of the respondent, George C. Blackburn. In particular, Mr. Crislip moved the court to authorize such attorney *ad litem* to move to set aside the deed on the farm transferring it from George C. Blackburn to Betty Blackburn by use of a power of attorney, and moved that the court set aside the power of attorney. "Further, the Attorney *Ad Litem* should move to set aside an alleged lease of the farm to George D. Blackburn for a period of fifty (50) years at $1.00 per year." The response alludes to a hearing, but there is nothing in the record to indicate a hearing was held nor an order of court thereon. The response prays that the transfers of respondent's property be nullified.

On March 4, 1997, James A. Crislip, as a friend of the court, filed a "Response to Report and Recommendation of Guardian *Ad Litem* and Motion to Appoint Attorney *Ad Litem*." At this point, the record indicates that there had been no report of the guardian *ad litem* filed, but apparently a copy of the report had been furnished to James Crislip. On July 16, 1997, the petitioner filed a second amended petition for the appointment of conservator and outlined the deterioration of respondent's medical condition. The petition also averred the removal of funds from respondent's savings account which were placed in the name of Donald Blackburn. It asked for a restraining order to prevent Donald Blackburn from disposing of any of the said funds. The petition reiterates the request to be appointed conservator. A hearing was set for this petition on August 8, 1997.

On August 8, 1997, the guardian *ad litem*, Kathleen Gomes, filed "Report and Recommendation of Guardian *Ad Litem*." We see no need to detail the statements in the report, except to the extent that the report states that the petitioner admitted that she used the power of attorney to make the transfers of respondent's real property to herself. The guardian *ad litem* also noted that she expressed to the petitioner that "the transfer of real property by power of attorney appears to be inappropriate."

On August 8, 1997, the court held a hearing upon the petition, the first amended petition, and the second amended petition. On August 11, 1997, the court entered an "Order Appointing Conservator of the Person and Estate," which appointed petitioner, Betty Blackburn, as conservator of the estate and person of George C. Blackburn. The order recites that it is premised on the pleadings, the report of the guardian *ad litem*, statements of counsel for petitioner and the guardian *ad litem*, affidavits of physicians, testimony in open court of Betty Blackburn and Donald Blackburn and the entire record in the cause. The court found that the respondent was in need of a conservator and appointed Betty Blackburn conservator, and also specifically authorized her to pay certain debts and to do other necessary things not material to this appeal. The order specifically stated:

> 4.   That any real estate transfers heretofore made by BETTY BLACKBURN as Power of Attorney for GEORGE C.

> BLACKBURN shall be transferred back to the original ownership of GEORGE C. BLACKBURN.
>
> 5. That BETTY BLACKBURN as Conservator is to receive all assets owned by the Respondent including bank accounts and personal property and to place such funds in a Conservatorship account(s). ...

The record indicates that by notice dated November 12, 1997, the Conservator, Betty Blackburn, was notified to file a settlement in the case on or before December 12, 1997. The next entry in the record is clerk's citation issued March 1, 1999, in which the Conservator is notified to file an accounting on or before March 31, 1999. By order entered April 5, 1999, the court granted a continuance for the matter of filing the annual settlement until May 28, 1999.

The next entry in the record is April 28, 1999: a filing of a "Petition to Admit to Probate the Last Will and Testament of George C. Blackburn" in Cause No. B33191. The petition is filed by Donald Ethridge Blackburn and Bobby Striplin, as executors of the estate of George C. Blackburn pursuant to a will dated May 20, 1994, which petitioners allege they were recently furnished. The petition alleges that George C. Blackburn died on August 14, 1997. The will presented to the court, among other things, leaves the two properties in Memphis at 4219 Zaio and 4237 Zaio to Betty G. Blackburn. The will also leaves the eastern half of the 444-acre farm to Donald Ethridge Blackburn, and western half of the farm to George David Blackburn.

On April 28, 1999, an order was entered in cause number B33191 and filed in this record admitting the will to probate and appointing Donald Ethridge Blackburn and Bobby Striplin as executors. Other pleadings filed in this record concerning the estate in Cause No. B33191 are not material to this appeal, including Betty Blackburn's "Petition for Elective Share, Year Support, Exempt Property and Homestead," and a claim filed by Betty Blackburn.

On November 8, 1999, Betty Blackburn filed a "Petition to Approve Final Accounting in the conservatorship proceeding." She prayed that the accounting be approved and that she be discharged from further fiduciary responsibilities.

Subsequently, further pleadings were filed in this cause in connection with the estate of the deceased, and on January 21, 2000, the court entered "Order Approving Amended Final Accounting and Discharging Conservator and Closing Conservatorship in the conservatorship proceeding." The court approved the amended accounting and noted that George C. Blackburn died three days after the opening of the conservatorship, and no assets were received by the Conservator. The order then states:

> It further appearing to the Court that under item 4 of the Court order appointing the conservator that the real estate transfers heretofore made by Betty Blackburn as Power of Attorney for George C. Blackburn were ordered transferred back to the original ownership of

George C. Blackburn and that this was not done. The Court now finds that it appointed a conservator based upon the expectation that the administration of the Ward's affairs was needed over a reasonable time period and which now did not occur due to the immediate death of the Ward following the opening of the Conservatorship. It further appears that there were no assets received by the Conservator or expended by the Conservator for the benefit of the Ward, George C. Blackburn, and that for all practical purposes the conservatorship should be regarded as a non-existent. It further appears that there was no necessity for the administration of this Conservatorship for Betty Blackburn to transfer back to the original ownership of George C. Blackburn any real estate transfers heretofore made by Betty Blackburn as Power of Attorney for George C. Blackburn. The Court further finds that Betty Blackburn asserts personal ownership in the real estate assets and objects to the order requiring her individually to convey real estate transfers heretofore made by her as Power of Attorney for George C. Blackburn back to his original ownership, and it appears from statements of Counsel and from the entire record that proper pleadings and notice of hearing were not served upon Betty Blackburn, individually, regarding the issue of ownership of the real estate, and that she was not afforded an opportunity to have a proper hearing on this matter and she was not afforded due process of law. The Court therefore concludes that the part of this Court's order compelling her to transfer the real estate is not proper under the circumstances and therefore should be annulled, canceled and vacated. It further appears that the personal representative of the Estate of George C. Blackburn has made an appearance in open Court on the hearing of the petition to approve the final accounting and sought of the Court to retain jurisdiction over Betty Blackburn and reserve for its further orders her failure to comply with the Court's order to transfer the real estate and noted his exceptions, which exceptions are not well taken and so noted.

The order then provides:

3. That item 4 of this Court's Order in this Cause appointing Conservator of the Person and Estate, which states as follows: "That any real estate transfers heretofore made by BETTY BLACKBURN as Power of Attorney for GEORGE C. BLACKBURN shall be transferred back to the original ownership of GEORGE C. BLACKBURN," is hereby annulled, canceled and vacated.

Donald A Blackburn, as Executor of the Estate of George C. Blackburn, deceased, appeals and presents the issue for review whether the trial court erred in vacating its order of August 11, 1997, requiring the Conservator to reconvey property to the respondent, George C. Blackburn.

Following the example of our Supreme Court in ***Grahl v. Davis***, 971 S.W.2d 373 (Tenn. 1998), we deem it appropriate to present a brief review of the fiduciary duties of the conservator. Justice Drowota, speaking for the Court in ***Grahl***, provided us with a concise and enlightened review of such duties, which we quote:

## FIDUCIARY DUTIES

> We begin our analysis with a brief review of the fiduciary duties which govern the actions of a conservator. The purpose of appointing a conservator is "to preserve the estate of an incompetent or disabled person." Tenn. Code Ann. § 34-4-202 (1991 Repl.). Pursuant to Tenn. Code Ann. § 34-4-207 (1991 Repl.), a conservator "shall have the same duties and powers as a guardian of a minor, and all laws related to the guardianship of a minor shall be applicable to a conservator." A conservator occupies a fiduciary position of trust of the highest and most sacred character. ***See Meloy v. Nashville Trust Co.***, 177 Tenn. 340, 149 S.W.2d 73 (1941). The conservator is to manage the conservatee's estate to the best advantage. ***See Steele v. Reese,*** 14 Tenn. (6 Yer.) 263 (1834). The conservator should endeavor to manage the estate so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it. ***Folts v. Jones***, 175 Tenn. 74, 132 S.W.2d 205, 208 (1939). A conservator should not change the character of the conservatee's property interests unless the change is necessary to protect and promote the interests of the conservatee. Id. In considering a conservator's request to cash a life insurance policy for the benefit of the conservatee's estate, this Court, in Folts v. Jones, stated:
>
> > Before the character of the interest in property held by a [conservatee] can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, as far as possible, the interests of the succession, this rule yields to the paramount rule which makes the [conservatee's] welfare the first consideration without regard to the rights of those who may have eventually rights to succession.

_Id.; see also Morris v. Morris_, 195 Tenn. 133, 258 S.W.2d 732 (1953).

A conservator is not the alter ego of the conservatee, however, and has no authority to exercise an elective right or power of the conservatee. _Folts,_ 132 S.W.2d at 207. Therefore, a conservator has no authority to terminate joint accounts in which the conservatee has an interest or to change a beneficiary on a life insurance policy. _Folts_, 132 S.W.2d at 207; _see also Howard v. Imes_, 90 So.2d 818 (Ala. 1956); _In Re: Estate of Wright_, 424 N.W.2d 268 (Mich. 1988); _Hendricks v. Grant County Bank_, 379 P.2d 693, 697 (Okla. 1963); _Matter of Guardianship of Rich_, 520 N.W.2d 63 (S.D. 1994); _Rozycke v. Sroka_, 279 N.E.2d 155 (Ill. Ct. App. 1972); _Matter of Estate of Briley_, 825 P.2d 1181 (Kan. Ct. App. 1992); _Maess v. Greenfield_, 547 S.W.2d 777 (Ky. Ct. App. 1977); _Strain v. Rossman_, 614 P.2d 102 (Or. App. 1980). Instead, the conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee. _Folts v. Jones_, 132 S.W.2d at 207; _see also Schlieper v. Rust,_ 360 N.E.2d 1192, 1197 (Ill. Ct. App. 1977); _Rozycke v. Sroka_, 279 N.E.2d at 158.

A conservator owes the conservatee an undivided duty of loyalty. 18 Tenn. Juris., _Mentally Ill and Other Incompetents_, § 8, p. 323 (1984). The conservator cannot be allowed by law to have any inducement to neglect the interests of the conservatee. _Freeman v. Martin_, 181 Tenn. 470, 181 S.W.2d 745, 746 (1944). Therefore, it is generally held that a conservator violates his or her fiduciary duty by acquiring, by purchase or otherwise, the property of the conservatee. _Id._; _see also Lanius v. Donnell_, 222 Tenn. 58, 432 S.W.2d 659 (1968).

_Id._ at 377-378 (footnotes omitted).

Appellee first asserts that the appellant does not have standing to contest the trial court's action, because the executor of the estate has no interest in the deceased's real estate. While we do not dispute that real estate vests in the successor immediately upon the death of deceased, either by will or intestate succession, this is not the issue in this case. We are dealing with the approval of a final accounting of a conservator.

The conservator is charged with the duty of managing the ward's estate to the best advantage. _See Grahl_, 971 S.W.2d at 377. To this end, the conservator must acquire and take charge of the ward's assets. It is undisputed that, prior to her appointment as conservator, Betty Blackburn,

conveyed property to herself that belonged to the ward pursuant to a power of attorney. The trial court properly ordered her, as conservator, to convey the property back to the ward as part of the conservatorship estate. Upon the death of the ward, the duty devolved upon the ward's personal representative to approve or disapprove the final accounting of the conservatorship estate. The failure of the conservator to comply with orders of the court and preserve the ward's assets gives the executor standing to dispute the final accounting and to appeal the court's approval thereof.

The appellee next asserts that the order of August 1997, requiring the Conservator to convey the property back to the respondent-ward, was an interlocutory order subject to a revision at any time and, thus, the provision in the final decree vacating that order was proper. In the alternative, appellee asserts that if the August 1997 order was a final order, the trial court acted within its prerogative pursuant to Tenn.R.Civ.P. 60.02 in setting aside that part of the order.

We agree with appellee that if the 1977 order is an interlocutory order[1], the trial court can set it aside at any time prior to the entry of a final order. As to the appellee's alternative assertion that the trial court, if dealing with a final order, was correct in setting the order aside pursuant to Tenn.R.Civ.P. 60.02, we have reservations, since no motion was filed for such relief. However, we do not deem it necessary to decide whether the 1977 order was final or interlocutory.

This appeal is from the final order approving the Conservator's accounting which shows that the Conservator did not take any steps to gather and protect the ward's property. Particularly, on August 11, 1997, the court ordered the Conservator to perform her duties as conservator, and she totally ignored the court's order from that time to the final accounting in January 2000. The trial court indicated in the final order that the Conservator did not have notice of the court's action in requiring the return of the ward's property, but we beg to disagree. The Conservator and her counsel clearly had notice of the 1997 order when she made the required bond. Yet, for a period of over two years, she took no action to contest the order and deliberately failed to perform her duty as conservator as the court ordered her to do.

The Conservator does not dispute that she, as a fiduciary under a power of attorney, conveyed property of the grantor of the power of attorney to herself. In William H. Inman, *Gibson's Suits in Chancery*, § 22 (7th ed. 1988), it is stated:

> In order to avoid any possible contention, and to leave absolutely no room for casuistry, Courts of Equity consistently rule, without exception, that no trustee shall in any case, or under any circumstances, directly or indirectly, acquire any personal interest or title in or to the trust property, or its proceeds, or make any personal profits out of the trust, or by means of his trust character, without the full consent of the beneficiary, given under circumstances that leave

---

[1] T.C.A. § 35-50-105 (1996) appears to make the order appointing a conservator a final order for appeal purposes by the conservator.

no room whatever to question the perfect fairness and good faith of the whole transaction.

The author notes that this rule applies to the entire range of fiduciaries and, thus, would apply to an attorney in fact. *See id*. § 22.

From the early days of Tennessee jurisprudence, the duty of a fiduciary has been certain. As this Court noted in *Gillespie v. Branham*, 337 S.W.2d 689 (Tenn.Ct.App. 1959):

> No statement of the general rule can excel in strength and clarity the statement of Judge Caruthers on our Supreme Court (1855) when considering the duty that a trustee owed to the beneficiaries when dealing with trust property. The case is *Tisdale v. Tisdale*, 34 Tenn. 596, and the Court said:
>
>> Thus circumstances, then, could he take to himself, individually, the benefits of his purchase, to the exclusion of his cotenants? Surely not. Nothing is better settled in equity jurisprudence. It is one of the canons of a court of equity that one who undertakes to act for others cannot in the same matter act for himself. Where confidence is reposed, duties and obligations arise which equity will enforce. A trustee cannot throw off the trust at pleasure, to the injury of the cestui que trust. He will not be allowed to mix up his own interests and affairs with those of the beneficiary. This doctrine has its foundation not so much in the commission of actual fraud, but in that profound knowledge of the human heart, which dictated that hallowed petition, 'lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth, that 'a man cannot serve two masters.' The right to sell and to buy cannot exist in the same person, because of the antagonistic interest in the two positions. Hence the fairness or unfairness of the transaction, and the comparison of price and value, or the existence or absence of actual fraud, are not permitted to enter into the consideration of the court. It is enough that the relation of trustee and cestui que trust existed. This appearing, the investigation is at an end, and the doctrine applies with all its force. It is certainly too

late in the day to require the citation of authorities to
establish this doctrine.

*Id.* at 691.

In the instant case, the undisputed breach of trust by the attorney in fact cannot be allowed to stand. The Conservator's failure to rectify the situation as ordered by the court taints the final accounting to the extent that it should not have been approved.

Accordingly, the order of the probate court is vacated, and this case is remanded to the probate court for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Betty Blackburn.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.