200 F.Supp.2d 1053 (2001)
Wilma WARREN, Plaintiff,
v.
The BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, Defendant.
No. 4:00CV1057(MLM).
United States District Court, E.D. Missouri, Eastern Division.
August 23, 2001.
*1054 *1055 Cathy Steele, Cathy Steele Law Office, P.C., Clayton, MO, for plaintiff.
Kenneth C. Brostron, James C. Hetlage, Lawrence J. Wadsack, Lashly and Baer, P.C., St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
MEDLER, United States Magistrate Judge.
Plaintiff Wilma Warren ("Plaintiff") filed a petition in the Circuit Court of the City of St. Louis against the Board of Education of the City of St. Louis ("Defendant") that included five counts: Count I Unreasonable search under the Fourth Amendment to the United States Constitution; Count IIViolation of Plaintiff's right to Due Process under the Fourteenth Amendment to the United States Constitution; Count IIIviolation of rights under color of law per 42 U.S.C. § 1983; Count IVInvasion of Privacy; and Count V Intentional infliction of emotional distress. The action was removed to the United States District Court. Defendant then filed a motion to dismiss Counts IV and V of Plaintiff's complaint, which the Court granted. [18] Thus, only Counts I, II and III now remain. Defendant now moves for summary judgment with respect to Plaintiff's remaining three counts. [24] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [11]

I.

SUMMARY JUDGMENT STANDARDS
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the Court shows that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir.1997). The initial burden is placed on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in his favor. Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir.1997); City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., 838 F.2d 268, 273 (8th Cir.1988).
Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and "specific facts showing there is a genuine issue for trial." Handeen, 112 F.3d at 1346 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Once the burden shifts, a party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to the jury without any significant probative evidence tending to support the complaint. Anderson, 477 U.S. at 256, 106 S.Ct. 2505. Moreover, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the non-moving party must establish to the court that there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him. Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548.
*1056 Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 106 S.Ct. at 2553, 106 S.Ct. 2548.
In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
Celotex, 106 S.Ct. at 2553, 106 S.Ct. 2548.
If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir.1979). The summary judgment procedure is not a "disfavored procedural short-cut." Rather, it is an "integral part of the Federal Rules as a whole." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); City of Mt. Pleasant v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).

II.

FACTS
In passing on a motion for summary judgment, the court is required to view the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that can logically be drawn from those facts. Matsushita Electric, 475 U.S. at 587, 106 S.Ct. 1348; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, the court is required to resolve all conflicts in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). Viewing the record in the light most favorable to Plaintiff, the Court finds that the following facts are relevant for resolving the instant motion for summary judgment.
1. St. Louis Board of Education Regulation R4844 provides, in pertinent part:
It is the responsibility of the Board of Education to maintain a drug-free working environment and to provide ongoing educational activities, information regarding possible penalties, and available counseling and rehabilitation services to accomplish that goal.
1. Reasonable Suspicion

When a supervisor has a reasonable suspicion, based on objective criteria* that an employee is under the influence of alcohol or drugs while on the job, he/she shall immediately report this by telephone to the Human Resource Officer or his/her designee. A written report must be submitted by the supervisor within 48 hours.
* Objective criteria is defined as suspicion on personal observation by the supervisor of an employee's appearance, behavior, speech or breath odor. Information based on third party observation may not be considered valid as a basis for testing.
2. Testing

Upon receiving a report as described in Section 1, above, the Human Resource Officer or his/her designee shall direct an employee to go immediately to a *1057 medical facility to provide urine and/or blood specimens for testing; and to receive a medical examination by a licensed physician to determine his/her fitness to work.
Employees who are subject to the requirement for testing shall be suspended until the required testing results are received. If the results are negative and the employee is declared medically fit to work, he/she shall be reinstated with back pay for the period of suspension. An employee who refuses to undergo testing and examination, shall be subject to disciplinary action including discharge. An employee whose test results are positive shall be subject to disciplinary action, including discharge.
2. Plaintiff has been a teacher in the St. Louis Public Schools since 1988.
3. On May 4, 1999, Plaintiff was serving as a teacher at Ford Elementary Community Education Center.
4. On May 4, 1999, Plaintiff, Mr. Scott, an art teacher, Geneva Jackson, Instructional Coordinator, and Denise Segers, Principal at Ford School, met in Ms. Segers' office to discuss an incident between Mr. Scott and some of the students in Plaintiff's classroom.
5. On May 4, 1999, during this meeting, Plaintiff's principal, Denise Segers, observed Plaintiff eyes to be red and glassy. Plaintiff acknowledges that her eyes were red that day because they have been red all of her life. Ms. Segers had numerous opportunities to observe Plaintiff's red eyes prior to May 4, 1999, because Plaintiff taught at Ford School while Ms. Segers was principal for five years and during that time their relationship was friendly.
6. During this May 4, 1999, meeting, Ms. Segers described Plaintiff's behavior as erratic and aggressive. She found Plaintiff to be "out of control" and "scary." Ms. Segers was also afraid that Plaintiff would become violent. However, Ms. Segers acknowledges that Plaintiff remained seated during the entire meeting, and that she cannot recall what Plaintiff said or did that caused Ms. Segers to fear that Plaintiff would become violent. Plaintiff states she was not upset or irate during the meeting and that she did not raise her voice.
7. On May 4, 1999, Ms. Geneva Jackson, the Instructional Coordinator of Ford School, who was also present at the meeting, described Plaintiff's behavior as aggressive, erratic and argumentative. Ms. Jackson did not describe Plaintiff as violent.
8. In addition to her personal observations of Plaintiff occurring on May 4, 1999, Ms. Segers also personally observed Plaintiff engage in a pattern of erratic and aggressive behavior prior to May 4, 1999, and display difficulty in getting along with her fellow teachers.
9. Ms. Segers' knowledge included her awareness that Plaintiff had previously threatened other people, was very aggressive and verbally abusive and disrespectful toward colleagues, students and parents.
10. Ms. Segers had observed that Plaintiff's interpersonal relations problems with other teachers had been escalating.
11. Ms. Segers had personally observed Plaintiff display mood swings, which were increasing in frequency. She also had observed Plaintiff to be sniffling regularly.
12. Ms. Jackson confirmed Plaintiff's mood swings and prior erratic and aggressive behavior.
13. Ms. Segers asked Mr. Scott to leave her office during the May 4, 1999, meeting. Then, Ms. Segers requested that Plaintiff submit to a drug test, pursuant to Board Regulation R4844.
*1058 14. Plaintiff's initial reaction was disbelief. She thought Ms. Segers was joking. Subsequently, Plaintiff consented to take the test because she believed she had no choice. She believed this because it was requested by her superior and the consequences of not taking a drug test would be possible termination. Furthermore, the presence of the Security Guard, who had arrived at the end of the meeting, added to Plaintiff's belief that she could not refuse the test.
15. After asking Plaintiff to submit to the drug test, Ms. Segers called Gloria King, Human Resource director for the School District. Ms. Segers told Ms. King that she had a teacher who was exhibiting erratic behavior and conflict with other teachers and employees in the building. Ms. King, in recalling her telephone conversation with Ms. Segers on that date, states that she recalls Ms. Segers mentioning that Plaintiff was yelling and screaming, that Plaintiff's eyes were red that day and that Plaintiff had a confrontation with someone that day.
16. Plaintiff asked if she could make some phone calls before taking the drug test. She called her husband, who was not home. She called her union and made contact with Alva Jacobs. Ms. Jacobs instructed Plaintiff not to say anything but to ask Ms. Segers why she was being tested. Plaintiff asked Ms. Segers why she was being tested and Ms. Segers responded that it was because Plaintiff was having mood swings. Ms. Jacobs instructed Plaintiff to direct Segers to put that in writing. Ms. Jacobs also told Plaintiff not to sign anything without consulting with the union office and to make sure everything was put in writing.
17. Before going to the clinic for a drug test, Plaintiff also requested that she be allowed to go to her pharmacy and get a printout of all of her medication. Ms. Segers called Ms. King again and asked if this was okay to allow. Ms. King said that would be fine and Plaintiff was permitted to be escorted to the pharmacy to get a printout of her medications.
18. The Board's Office of Safety and Security recommends providing a security escort in situations where an employee is asked to submit to a drug test. If at all possible, Safety and Security tries to send two escorts to accompany employees who have been asked to submit to a drug test, particularly if the employee has behaved violently or erratically or displayed any hint of aggressiveness.
19. Ms. Segers directed that a security officer and a St. Louis Police officer, who was assigned to Ford School under the COPS Program, escort Plaintiff. The School Safety Officer and St. Louis City Police Officer Cheryl Orange both escorted Plaintiff from the Principal's office to her classroom for Plaintiff to pick up her personal belongings, back to the Principal's office, to the Schnucks pharmacy, to the medical clinic for the drug test, back to the Principal's office and off of school grounds.
20. Plaintiff's students and some of the other students, faculty and staff of Ford School witnessed Plaintiff under such escort. The pharmacist, who was familiar with Plaintiff, asked if Plaintiff was in trouble.
21. On May 7, 1999, Diane Rhome, field representative for the teachers union, called the office of Dr. David Flieg, Executive Director of Elementary School Education, to express concern over the reasons given for Plaintiff being required to undergo drug testing. She did not reach Mr. Flieg but left a message. The message concerned the use of a drug test for someone who exhibited mood swings, stating that mood swings could be caused by factors other than drug use, and questioning whether the principals were trained to discern *1059 whether mood swings were the result of drug use.
22. Pursuant to Regulation R4844, the drug test was conducted at a medical facility under appropriate medical conditions. Plaintiff does not take issue with the manner in which the drug test was conducted or the results.
23. The drug test results were negative. Pursuant to the provisions of Regulation R4844, Plaintiff returned to her teaching position at Ford School on the following Monday, May 10, 1999, with no loss of pay or employment benefits.
24. Regulation R4844 requires that Ms. Segers file a written report of the reasons she suspected drug usage within forty-eight hour of the test. Ms. Segers cannot recall whether she filed a report with Ms. King, nor does she have a copy of any report filed with any person.
25. On May 10, 1999, Ms. Segers sent Dr. Flieg a memorandum discussing her reasons for requiring Plaintiff to undergo drug testing. She stated the following in that memorandum:
I received Mrs. Alva L. Blue's letter regarding my request for a drug test analysis for fifth grade teacher, Mrs. Wilma Warren.
My increased concern regarding Mrs. Warren's erratic and aggressive behavior, impunctuality [sic], and blatant disrespect for her students, parents, and colleagues prompted me to request a drug test analysis. Mrs. Warren's behavior has been unpredictable, capricious at best.
Having met with Mrs. Warren on several occasions and observed her in the classroom, Mrs. Warren has demonstrated resistance to adhering to attendance policies, verbally disrespected parents, students, and staff and continues to be argumentative when she feels there is opposition. She incessantly heralds rumors and manifests idol [sic] gossip of her fallacy of distinguished power and authority to anyone who will listen.
Mrs. Warren's character presentation encompassed extreme moments from virtuous joy to streaming tears, to a diabolical fury. Her gleaming, glassy red eyes, belligerent body language, and incessant sniffling warranted suspicion of chemical substance abuse.
On Tuesday, May 4, 1999 in an exclusive conference with Mrs. Warren and another staff member, Mrs. Warren became highly irritated and enormously vocal. The St. Louis Public School Security Officer entered the office to assure the safety of all involved parties. Since she has previously demonstrated this type of behavior in the past, I therefore invoked the Board of Education policy, rules, and regulations to request a drug test analysis.
Ms. Warren acted with enthusiasm and gleefully stated, "I will be glad to have a drug test, then I won't have to pay Smith-Kline." Mrs. Warren further stated that her brother's lawyer had requested a drug test through Smith-Kline and now she doesn't have to pay for it.
See Plaintiff's Exhibit 6.
26. On June 8, 1999, Alva Blue, Field Representative for the St. Louis Teachers and School Related Personnel Union Local 420, AFT/AFL-CIO, wrote Dr. Flieg a letter in which she stated:
Local 420 hereby files a Step Two Grievance specified in Section A, Article V:A-3 of the Policy Stated on behalf of the above member.
Principal Segers chose to affirm her decision to let stand her May 10, 1999 memo and attachments to you defending a Drug Test Analysis for Mrs. Warren. Local 420 contends that Principal Segers is incorrect because she neither directly nor indirectly documented "mood *1060 swings" and the behavior of a staff member who is:
"erratic; aggressive; blatantly disrespectful to students, parents and colleagues; unpredictable, at best; argumentative when faced with opposition; and incessant heralder of rumors and idol [sic] gossip; virtuously joyful to streaming tears to diabolical fury; exhibiting belligerent body language; and incessant sniffler."
At best, Mrs. Segers' support documentation could suggest a conversation with a professional to discuss several strained relationships with colleagues. Even then, the District's policy documents EAP: A MANAGEMENT TOOL states that a supervisor it to:
"BE CERTAIN TO FOCUS ON JOB PERFORMANCE ONLY! DO NOT TRY TO DIAGNOSE!"
Furthermore, Principal Segers makes no mention that Mrs. Warren's job performance is substandard. Likewise, the principal's accounts do not rise to the standard outlined in Board Regulation R4844 for a Drug Free Workplace. Objective criteria is defined as suspicion based on personal observation by the supervisor of an employee's appearance, behavior; speech or breath odor.

Board Regulation R4844 also stated:
"Information based on third party observation may not be considered valid as a basis for testing."
Yet, Mrs. Segers includes statements of Mrs. Warren's colleagues as part of her justification for drug testing.
Additionally, Mrs. Warren disputes the accusation that her behavior prompted the safety officer to interrupt the May 4 conference. Instead, either the safety officer's visit was preplanned or the office was making an inquiry because she viewed Principal Segers' voice as threatening.
Therefore, Local 420 is requesting that the May 10, 1999 memo and attachments to you be expunged from Mrs. Warren's file.
See Plaintiff's Exhibit 7. (Italics and bold emphasis in original).
27. Mr. Flieg responded to Ms. Blue's step two grievance. He noted that, although Local 420 did not find Mrs. Segers' letter of May 10, 1999, to be an adequate explanation for why she asked Plaintiff to undergo drug testing, "the response stands on its own merit. It is now part of the record. The drug testing has been completed." See Plaintiff's Exhibit 7.
28. Ms. Blue, on behalf of Local 420, then filed a Step Three Grievance on behalf of Plaintiff with Susan Dyer, Deputy Superintendent of the St. Louis Public Schools. Again, Ms. Blue indicated that Mrs. Segers violated District procedures by not relating observations to job performance, by not documenting behaviors described in the May 10th, memo to David Flieg and by not having personal observations of alleged inappropriate behaviors. Therefore, Local 420 requested that the May 10, 1999 memo and attachments be expunged from Plaintiff's file. See Plaintiff's Exhibit 7.
29. On September 2, 1999, Ms. Dyer responded as follows:
Board of Education Policy supports the principal's decision to request a drug analysis based upon her behavior. However, we will agree to expunge the memorandum from Ms. Warren's file since the drug analysis was negative.
See Plaintiff's Exhibit 7.
30. Plaintiff described her relationship with Ms. Segers as congenial and very confidential. Ms. Segers was a person in whom Plaintiff could confide all the time. Plaintiff and Ms. Segers are sorority sisters. *1061 Plaintiff described Ms. Segers as a friendly person with whom she could talk.
31. Ms. Segers agreed that her relationship with Plaintiff was "friendly."
32. Plaintiff suffered no loss of pay or employment benefits and remains employed as a teacher in the St. Louis Public Schools.
33. Plaintiff is the only teacher to have been tested for drugs during the period of 1999 to the present. Fewer than ten teachers have been tested during the four or five years prior to 1999.
34. Ms. Segers has never requested a drug test on any employee before or subsequent to the test of Plaintiff, in the nine years she served as either the assistant principal at William's Middle School or the principal at Ford Elementary.
35. Mr. Ilan Valley, a co-worker of Ms. King, has glassy, red eyes. He has never been tested for drugs.
36. Ms. King is aware of other teachers who had displayed erratic behavior, but have not been tested for drugs.
37. Ms. Segers describes Plaintiff as having difficulty getting along with her co-workers. She stated that Plaintiff's disposition changes toward another person if that person disagrees with the Plaintiff. Plaintiff admits that she has had confrontations with her co-workers when she feels that they have not been treating their students properly.
38. Ms. Segers felt that Plaintiff's presence in her school was not conducive to staff morale and student academic performance, yet she never gave the Plaintiff a negative performance evaluation. Mr. Segers wanted Plaintiff transferred to another school and attempted to have her transferred in December 1998 and January 1999.
39. Ms. Segers prepared several job evaluations for Plaintiff. In one evaluation, she wrote that Plaintiff needed to learn how to get along with her coworkers. Plaintiff responded to this evaluation by stating that her coworkers needed to learn how to get along with her. It was mutual.
40. Other principals also indicated issues regarding Plaintiff's ability to get along with coworkers. However, the issues with coworkers have always been specifically about their treatment of the students; the issues have been about the relationship the teachers had with the students.
41. Plaintiff has never used illegal drugs. She has never taken drugs that were not prescribed for her. She has never been under the influence of drugs or alcohol when teaching.

III.

ANALYSIS

A. Fourth Amendment Claim
Defendant contends that summary judgment should be entered in its favor on Plaintiff's claim under the Fourth Amendment, because Plaintiff's drug test was carried out pursuant to Regulation R4844 and because Principal Denise Segers had reasonable suspicion to believe that Plaintiff was under the influence of drugs. Thus, Plaintiff's Fourth Amendment rights were not violated. Furthermore, Defendant argues that Plaintiff has no Fourth Amendment claim because she consented to the drug test.
The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or *1062 those acting at their direction. Id.See also Chandler v. Miller, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997).
It is now well-settled that drug testing which utilizes urinalysis is a "search" that falls within the ambit of the Fourth Amendment. Skinner, 489 U.S. at 617, 109 S.Ct. 1402. See also Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 1287, 149 L.Ed.2d 205 (2001) (It is undisputed that urine tests are searches within the meaning of the Fourth Amendment). However, having determined that urinalysis is a search under the Fourth Amendment does not mean that urinalysis is never permitted. For the Fourth Amendment does not proscribe all searches and seizures, but only those that are not reasonable. United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); Knox County Education Ass'n v. Knox County Board of Education, 158 F.3d 361, 371 (6th Cir. 1998).
To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing. Chandler v. Miller, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Whether a search is reasonable under the Fourth Amendment is a question of law to be determined by the Court. See Knox County Education Ass'n v. Knox County Board of Education, 158 F.3d 361, 371 (6th Cir.1998); United States v. Jones, 133 F.3d 358, 360 (5th Cir.1998); United States v. Cantley, 130 F.3d 1371, 1375 (10th Cir.1997).
In this case, Principal Segers was authorized by School Board Policy to order a urinalysis to determine drug use if she believed there was an individualized suspicion of drug use on the part of a teacher and she made personal observations which would lead her so to believe. Although the issue of whether Mrs. Segers was reasonable in ordering the urinalysis is a question of law, the facts relevant to making such a determination are clearly in dispute.
Reviewing the facts in the light most favorable to Plaintiff, resolving all disputes in her favor, and giving her the benefit of all inferences to be drawn therefrom, the Court finds that there was nothing before Mrs. Segers upon which she could reasonably base an articulable individualized suspicion that Plaintiff was using or under the influence of drugs on May 4, 1999. Mrs. Segers observed a few conflicts between Plaintiff and other teachers prior to May 4, 1999 over the several years preceding the date in question. In addition, over the several years preceding the date in question, Mrs. Segers observed Plaintiff happy on some occasions, and distressed and/or unhappy on others. On May 4, 1999, Mrs. Segers learned of another conflict between Plaintiff and a teacher. She called both parties into her office. Although Plaintiff and the other teacher said horrible things to each other, Plaintiff never became irate, aggressive or violent. She remained seated in her chair the entire time and never raised her voice. Again, these are the facts viewed in the light most favorable to Plaintiff.
Assuming these facts are true, which this Court must do for purposes of resolving the instant motion for summary judgment, Plaintiff's behavior indicates a difficulty in getting along with other teachers, which she acknowledges. However, there is nothing in these facts which would suggest to Mrs. Segers that Plaintiff's conflicts with the other teachers was a result of drug use. Moreover, there is nothing to suggest that on May 4, 1999, the date upon which Mrs. Segers ordered Plaintiff to undergo a drug urinalysis, Plaintiff was using or was under the influence of drugs.
Of course, Defendant has presented facts which, if true, would suggest that *1063 Mrs. Segers may reasonably have had an articulable suspicion that Plaintiff was using drugs or was under the influence of drugs on May 4, 1999. Determining which party to believe, however, requires a credibility determination. This is a question for the jury. Thus, although the question of reasonableness is one for this Court to ultimately make, the jury must hear the underlying facts and determine those. See e.g. Shands v. City of Kennett, 993 F.2d 1337 (8th Cir.1993) (whether a public employee's speech is protected by the First Amendment is a question of law for the court; however, any underlying factual disputes concerning whether the plaintiff's speech is protected should be submitted to the jury through special interrogatories or special verdict forms; the trial court should then combine the jury's factual findings with its legal conclusions in determining whether the plaintiff's speech is protected).
The Court also finds that a genuine issue of material fact exists as to whether Plaintiff consented to the drug urinalysis. Viewing the facts in the light most favorable to Plaintiff, it is clear that Plaintiff believed she had to agree to the test or she would be terminated. This is supported by Board Policy which expressly provides that failure to undergo a drug urinalysis upon request will result in termination if employment. Thus, Plaintiff did not freely give her consent to the test.
For these reasons, Defendant's motion for summary judgment on Count I of Plaintiff's complaint will be denied.

B. Due Process Claim
The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. This clause has two components: the procedural due process and the substantive due process components. Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir.1999).
Plaintiff's due process allegation, as set forth in her complaint, is in pertinent part as follows:
24. The Defendant, through its agents and employees violated the Plaintiff's Fourteenth Amendment right to due process by asking her to take a drug test when that action was not founded upon direct observation by her supervisor.
25. The actions of Defendant, through its agents and employees, was undertaken with malicious and evil motive or reckless indifference to the rights of the Plaintiff.
26. As a direct result of the actions of the Defendant, through its agents and employees, the plaintiff has suffered public humiliation, pain and suffering, embarrassment, damage to her reputation and career, and loss of the enjoyment of life.
See Plaintiff's Complaint, p. 5.
It is unclear from the complaint whether Plaintiff is asserting a procedural due process claim or a substantive due process claim. Defendant moves for summary judgment under a substantive due process analysis. Defendant contends that summary judgment should be entered in its favor on Plaintiff's Due Process claim because Plaintiff has not satisfied the required standard for Due Process claims, which requires that the Defendant's behavior must "shock the conscience" and be "truly irrational." Plaintiff responds to Defendant's motion for summary judgment arguing both a procedural due process and substantive due process violation. Under either case, the Court finds Defendant's motion for summary judgment should be granted.

*1064 1. Procedural Due Process

In analyzing a procedural due process claim, the Court must first determine whether Plaintiff has been deprived of an interest protected by the Constitution of the United States. Where no such interest exists, there can be no due process violation. Singleton, 176 F.3d at 424 (quoting Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir.1997)). If an interest exists, the Court must then determine whether the procedures used to deprive Plaintiff of her interest were constitutionally sufficient. Townes v. City of St. Louis, 949 F.Supp. 731, 736 (E.D.Mo. 1996), aff'd 112 F.3d 514 (8th Cir.), cert. denied 522 U.S. 893, 118 S.Ct. 235, 139 L.Ed.2d 166 (1997). It is important to note that the crux of a procedural due process claim "is not that the plaintiff has a right to keep the thing in question at all events, but rather that the state cannot deprive him of it without some sort of hearing, either before or after the deprivation." Singleton, 176 F.3d at 431 (Richard S. Arnold, J., dissenting) (emphasis added).
Here, the Court finds that Plaintiff's claim of a procedural due process violation fails in several respects. She cannot establish a protected liberty interest and that she was deprived of that interest. Moreover, she cannot establish that she was denied due process before being deprived of any such interest.

a. Protected Liberty Interest
First, to the extent Plaintiff asserts that she has a liberty interest in being free from undergoing a drug urinalysis, her claim fails. The Court has been unable to find a case which suggests that a teacher has a protected liberty interest in being free from undergoing a urinalysis. And, indeed, some case law would suggest the contrary. See e.g., Knox County Education Ass'n v. Knox County Board of Education, 158 F.3d 361, 379 (6th Cir. 1998) (a local school district has a strong and abiding interest in requiring that teachers and other school officials be drug-free so that they can satisfy their statutory obligation to insure the safety and welfare of the children). As stated in Knox,
That a teacher's expectation of privacy as to drug use might be diminished is further underscored by the unique role teachers play in the lives of our nation's children. As we have noted, teachers are not just role models, but mentors, friends, and in some cases, parent-figures that stand in the place of absent parents. Teachers leave indelible impressions on the minds of their young students, because they are entrusted with the safe keeping and education of children during their most impressionable and formative years. Therefore, teachers must expect that with this extraordinary responsibility, they will be subject to scrutiny to which other civil servants or professionals might not be subjected, including drug testing.
158 F.3d at 384.[1]
Second, to the extent Plaintiff argues that her reputation as a teacher was stigmatized by the fact she had to undergo a drug urinalysis and it is this reputation that creates the liberty interest, her argument still fails. An extensive review of the Eighth Circuit cases on this issue does not provide a distilled discussion of the elements necessary to establish a protected liberty interest. However, upon synthesizing the principles set forth in these cases, *1065 it appears that an employee must prove the following in order to establish a liberty interest based upon her reputation: (1) the defendant made a statement impugning the plaintiff's good name, reputation, honor or integrity in that the statement indicated dishonesty, immorality, criminality and/or racism on the part of the plaintiff; (2) the statement was false; (3) the defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities; and (4) the statement was published. See, e.g., The Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Coleman v. Reed, 147 F.3d 751, 754-55 (8th Cir.1998); Winegar v. Des Moines Independent Community School District, 20 F.3d 895, 899 (8th Cir.1994); Hogue v. Clinton, 791 F.2d 1318 (8th Cir.1986); Pollock v. Baxter Manor Nursing Home, 716 F.2d 545 (8th Cir. 1983). The Court finds that Plaintiff cannot establish all four of these elements.
First, the Court assumes, without deciding, that being required to undergo a drug urinalysis constitutes a statement which impugned Plaintiff's reputation because it suggested the immoral use of drugs. Second, because Plaintiff tested negative, obviously any "statement" of drug use was false. However, Plaintiff can present no set of facts which establish that Defendant made the "statement" in the course of termination proceedings or the statement foreclosed future employment opportunities. The undisputed facts show that Plaintiff was not terminated. Although she was suspended for a short period of time, she returned to her job with back pay and Plaintiff suffered no negative repercussions from the testing in any manner. Moreover, there is nothing to indicate, and Plaintiff has failed to present any evidence suggesting otherwise, that undergoing this drug urinalysis has foreclosed any employment opportunities for Plaintiff. Thus, Plaintiff cannot establish the third element necessary to prevail on her liberty interest claim.
Furthermore, Plaintiff cannot establish that the "statement" was published. Defendant did not make the fact of Plaintiff's urinalysis public. Principal Segers asked Plaintiff to undergo drug urinalysis in a private meeting. There is no assertion by Plaintiff that Ms. Segers ever informed any person of Plaintiff's urinalysis other than those who were required to know pursuant to School Board policy. Moreover, the mere fact that Plaintiff walked through the hallways of the school in the company of a police officer and another school personnel member does not, in and of itself, constitute publication of the fact that Plaintiff was asked to undergo a drug analysis.
For all of these reasons, the Court finds that Plaintiff has not established a protected liberty interest in her professional reputation. Because Plaintiff does not have a liberty interest, Plaintiff's claim that her procedural due process rights were violated necessarily fails. Defendant's motion for summary judgment will be granted.

b. Opportunity to be Heard
Even assuming Plaintiff had sufficiently articulated a protected liberty interest, Plaintiff's claim nonetheless fails because Plaintiff can prove no set of facts which would establish the second prong of a due process violation claim. That is, Plaintiff is unable to establish that her reputation as a teacher was stigmatized and she was provided no opportunity to be heard on the matter.
Once it is determined that a protected liberty interest exists, the Court must proceed to the second prong of the procedural-due-process analysis; that is, whether the plaintiff was deprived of a hearing or some related form of due process before being deprived of the interest. *1066 Winegar v. Des Moines Independent Comm. School District, 20 F.3d 895, 899 (8th Cir.), cert. denied 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Winegar, 20 F.3d at 899-900 (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
The amount of process due is a flexible concept that varies with the particular situation. Thus, the same level of due process is not warranted in every situation. Winegar, 20 F.3d at 900 (citing Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). In employment cases, to comply with procedural due process, an employer must give a public employee verbal or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to respond. Miller v. Lovell, 14 F.3d 20, 21 (8th Cir.1994) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Plaintiff was provided with this due process.
The undisputed facts establish that Mrs. Segers, for whatever reason, believed Plaintiff to be using drugs or under the influence of drugs on May 4, 1999. She discussed this with Plaintiff in a private meeting between Mrs. Segers and Plaintiff. Plaintiff had the opportunity at that meeting to argue her position before Mrs. Segers, to deny the use of drugs and/or to explain the behavior Mrs. Segers found troubling. Plaintiff elected not to do so. This was, under the circumstances of this case, a sufficient opportunity for Plaintiff to be heard. See Coleman v. Reed, 147 F.3d 751 (8th Cir.1998).
Plaintiff then underwent the drug urinalysis. It was negative. Following the testing, Plaintiff returned to her teaching position in the school. She was not disciplined, denied pay, suspended or in any way treated negatively as a result of the testing. Through her union, she pursued several avenues available to her to have the documents concerning the testing expunged from her record. They were in fact expunged as she requested.
Plaintiff does not allege that she should have been provided any other hearings and she does not allege that she sought further hearings that were denied to her. Under the circumstances of this case, the Court finds that Plaintiff received all of the due process to which she was entitled. Defendant's motion for summary judgment will be granted with respect to Plaintiff's procedural due process claim.

2. Substantive Due Process

Unlike procedural due process, substantive due process has nothing to do with procedures or hearings. The concept is much more general. Singleton, 176 F.3d at 431 (Richard S. Arnold, J., dissenting). A substantive due process violation takes place when governmental power is exercised arbitrarily and oppressively. Id. (citing County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). "The core of the idea is not that government can deprive me of the thing in question only if it follows certain procedures, but rather that government cannot, for the reasons given, deprive me of the thing in question at all." Id.
Like procedural due process claims, analysis of a substantive due process claim also begins with an examination of the constitutional interest which allegedly has been violated. Carolan v. City of Kansas, Mo., 813 F.2d at 181; Moore, 836 S.W.2d at 947. As discussed above, the Court questions whether Plaintiff even possesses a constitutional interest worthy of protection under a substantive due process analysis. *1067 See Singleton v. Cecil, 176 F.3d 419, 425 (8th Cir.1999).
Regardless, the undisputed facts establish that Plaintiffs cannot meet the second element of a substantive due process claim. That is, Plaintiff cannot establish that Mrs. Segers' request that Plaintiff undergo a drug urinalysis was not an arbitrary and oppressive exercise of authority. Or, as further defined by the Eighth Circuit, it was not so egregious and so outrageous that it may fairly be said to have shocked the contemporary conscience. Rogers v. City of Little Rock, Ark., 152 F.3d 790, 796 (8th Cir.1998). See also Singleton, 176 F.3d at 425; Riley v. St. Louis County, 153 F.3d 627, 631 (8th Cir. 1998). A review of the facts, even in the light most favorable to Plaintiff, reveals that Plaintiff has failed to meet this burden.
Accepting all of Plaintiff's facts as true for purposes of resolving the instant motion for summary judgment, the facts establish that Mrs. Segers observed repeated conflicts Plaintiff had with other teachers, she witnessed an array of emotional behavior over a period of time, and Plaintiff was involved in a conflict on the day in question. Mrs. Segers, in private, asked Plaintiff to undergo a drug test. She called the appropriate personnel to confirm the drug test. She followed school board policy in implementing the drug test. Afterward, the drug test was expunged from Plaintiff's personnel file. The Court finds that even if Mrs. Segers did not have sufficient justification for ordering the drug analysis, her conduct still did not rise to the level of being so outrageous or egregious that it shocked the contemporary conscience. See e.g., Shrum v. Kluck, 249 F.3d 773 (8th Cir.2001); S.S. ex rel. Jervis v. McMullen, 225 F.3d 960, 964 (8th Cir.2000). Therefore, Plaintiff's claim of a substantive due process violation under the Fourteenth Amendment fails. Defendant's motion for summary judgment will be granted.

C. Section 1983 Claim
Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. This section does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right. See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("[S]ection[1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that [section 1983] describes."). To state a claim under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right. Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir.1997) (quoting West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).
Defendant contends that summary judgment should be entered in its favor on Plaintiff's § 1983 claim because the claim requires Plaintiff to prove that the Defendant's actions were taken under color of state law resulting in a deprivation of rights secured by the Constitution. Section 1983 relief is predicated on the denial of a right or interest protected by the Constitution. Defendant argues that, because the Board did not violate Plaintiff's Constitutional rights under either of her first two counts, Plaintiff is unable to satisfy the elements for a § 1983 claim.
The Court has found, however, that Plaintiff's claim of a Fourth Amendment violation survives summary judgment. *1068 Thus, Plaintiff's alleged Fourth Amendment violation provides the independent constitutional right necessary to support a § 1983 claim. Defendant's motion for summary judgment on this ground therefore fails.
As this is the only ground upon which Defendant has moved for summary judgment concerning Plaintiff's § 1983 claim, Defendant's motion for summary judgment will be denied.

IV.

CONCLUSION
For the reasons stated, the Court finds that Defendant's motion for summary judgment should be granted in part and denied in part. Defendant's motion will be denied with respect to Plaintiff's Fourth Amendment claim set forth in Count I of her complaint. Defendant's motion will be granted with respect to Plaintiff's Fourteenth Amendment Due Process claims set forth in Count II of her complaint. Defendant's motion will be denied with respect to Plaintiff's § 1983 claim set forth in Count III of her complaint.
Accordingly,
IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED in part and DENIED in part as set forth and discussed in the body of this Memorandum and Order. [24]
NOTES
[1] The Court appreciates that this analysis by the Sixth Circuit concerned suspicionless drug testing under the Fourth Amendment. However, the Court finds it applicable here to explain why Plaintiff does not have a liberty interest in being free from undergoing a drug urinalysis.